Christian Kesselring (USB #13773)
christian@wasatchlawgroup.com
**WASATCH LAW GROUP, PLLC**
P.O. Box 866
Heber City, Utah 84032
Telephone: 435-657-0185
Facsimile: 435-647-5951

Jaqualin Friend Peterson (USB #6226)
jaqualin@peckpeterson.com
**PECK PETERSON, LLP**
675 East 2100 South, Ste 350
Salt Lake City, Utah 84106
Telephone: (801) 521-0844
Facsimile: (801) 610-2115

*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KARNA SACCHI,<br><br>          Plaintiff,<br><br>vs.<br><br>IHC HEALTH SERVICES, INC., and JOY SINGH,<br><br>          Defendants. | **COMPLAINT**<br><br>Case No.:  2:16CV01107 DBP<br><br>Judge:  Dustin B. Pead<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Karna Sacchi, by and through her undersigned counsel, hereby complains against Defendants IHC Health Services, Inc. and Joy Singh as follows:

## NATURE OF CASE

1.      This is an action for associational discrimination in employment and retaliation under the Americans with Disabilities Act, sex and religious discrimination under Title VII of the Civil Rights Act, and age discrimination under the Age Discrimination in

Employment Act, seeking to make Plaintiff Karna Sacchi ("Ms. Sacchi") whole for the unlawful termination of her employment with Defendant IHC Health Services, Inc. ("IHC").  This Complaint also alleges that, by terminating Ms. Sacchi unfairly and without proper cause, IHC breached its obligations under a private agreement made for Plaintiff's benefit.  Finally, Ms. Sacchi seeks recovery for defamatory statements made by Defendant Joy Singh ("Ms. Singh") on behalf of IHC.

## JURISDICTION & VENUE

2.      This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331, and pursuant to statutory jurisdiction granted by the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12117(a), Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-5, and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 626.

3.      This Court has jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

4.      All preconditions to jurisdiction under the relevant statutes have been satisfied, in that Ms. Sacchi filed a timely charge of employment discrimination with the Equal Employment Opportunity Commission (the "EEOC"), the EEOC issued Ms. Sacchi a Notice of Right to Sue on July 27, 2016, and Ms. Sacchi filed this Complaint within 90 days of receiving the Notice of Right to Sue. (*See* Exh. A, Charge of Discrimination; Exh. B, Notice of Right to Sue.)

5.      Venue is proper in the District pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events or omissions giving rise to Ms. Sacchi's claims occurred in Utah, and IHC is located within this District.

## PARTIES

1.      At all times relevant hereto, Karna Sacchi is and was an individual residing in Salt Lake County, Utah.

2.      At all times relevant hereto, IHC Health Services, Inc. is and was a Utah nonprofit corporation having its principal place of business in Salt Lake County, Utah.  IHC operates several medical facilities in Salt Lake County, Utah and, as relevant to this action, does business as Primary Children's Hospital ("Primary Children's").

3.      At all times relevant hereto, Joy Singh is and was an individual residing in Salt Lake County, Utah.

## GENERAL FACTUAL ALLEGATIONS

4.      Ms. Sacchi is a woman, is non-religious, and at the time of her termination was 45 years old.

5.      Ms. Sacchi is not herself disabled, but at all relevant times her father has suffered from medical complications from heart failure, which substantially limit him in the major life activities of caring for himself, performing manual tasks, walking, breathing, standing, lifting, and working.

6.      In June 2015, IHC offered and Ms. Sacchi accepted an internship in the Primary Children's Child Life Intern Program (hereinafter the "Training Program"), which is a highly competitive clinical training program following the approved curriculum of the Child Life Council.

7.      The Child Life Council is an organization that governs professional certification of child life specialists.  To become certified, candidates are required to complete 480 hours of clinical training in addition to their instructional training.

8.      Primary Children's Training Program is specifically designed to provide students training in the work of a child life specialist.  In this regard, the Training Program is an accredited internship recognized by the Child Life Council.

9.      Concurrently with her internship, Ms. Sacchi was pursuing a master's degree in Mills College's Early Childhood Education with an Emphasis in Child Life in Hospitals program, which would have satisfied the educational component of the Child Life Council's eligibility requirements.  Ms. Sacchi's enrollment at Mills College also satisfied the accreditation requirements for participation in Primary Children's Training Program.

10.     To facilitate Ms. Sacchi's internship, IHC entered into a contractual relationship with Mills College, to provide for cooperation between the two entities in coordinating and managing the internship.  This relationship was memorialized in a written contract dated July 26, 2015, entitled "Individual Student Agreement" (the "Mills-IHC Agreement").

11.     By its express terms, the Mills-IHC Agreement provided (among other things) that:

    a)  The "objective" of Primary Children's Training Program is to provide Ms. Sacchi with "training … in the work of a Child Life Specialist in preparation for certification by the Child Life Council."

b) Ms. Sacchi's internship will begin on August 26, 2015 and end on December 15, 2015.

c) IHC will provide Ms. Sacchi a suitable clinical environment and supervision consistent with the Training Program's curriculum.

d) IHC will orient Ms. Sacchi to IHC's mission, philosophy, and general physical structure, and inform Ms. Sacchi of IHC Region/Facility policies, procedures and regulations with which Ms. Sacchi is expected to comply.

e) IHC covenants to "abide by all applicable anti-discrimination laws, including state and federal laws prohibiting discrimination against any employee or applicant or recipient of services on the basis of any protected class under state or federal law."

f) Ms. Sacchi's internship can only be terminated in one of two scenarios: (1) Ms. Sacchi's achievement or progress did not warrant continuation of the internship; or (2) for cause including patient endangerment, or violation of applicable rules, regulations, policies, or standards of professional ethics.

g) IHC will, with certain limited exceptions for requests of information made pursuant to legal process, "maintain the confidentiality of the terms, conditions and operations of this Agreement and any related documents."

h) IHC will carry out all of its responsibilities, duties, and activities under the Mills-IHC Agreement "in good faith."

12.     Students participating in Primary Children's Training Program must be from educational programs that are accredited by national accrediting bodies.

13.     To participate in the Training Program, Ms. Sacchi moved her household from California to Utah, rented a home in Salt Lake City, and enrolled her son in a Salt Lake City school.

14.     Ms. Sacchi began her internship on August 26, 2015, and was assigned to work full time under the supervision of child life specialists Rachelle Kroll ("Ms. Kroll") and Holly Moss-Rosen ("Ms. Moss-Rosen").

15.     At or around the time that she began her internship, Ms. Sacchi was given a copy of IHC's Orientation Booklet for Students in a Clinical Facility (the "Orientation Booklet"), which she read and relied upon during her participation in Primary Children's Training Program.

16.     IHC requires all its students participating in clinical facilities to take a Student Orientation Quiz showing that they are familiar with the IHC's express commitments, promises, and instructions in the Orientation Booklet.

17.     Ms. Sacchi took and passed the Student Orientation Quiz.  In her quiz, Ms. Sacchi was specifically questioned about IHC's commitment to a workplace free of unlawful discrimination or harassment.

18.     The Orientation Booklet expressly states that it is IHC's role and responsibility to "[a]ccept any student otherwise qualified without discrimination on the basis of any protected class under state or federal law."  IHC further commits to "comply with federal, state and local laws, rules and regulations," and asserts that its "workers and students are accountable to ensure that all activity by or in behalf of the organization is in compliance with applicable laws."  Finally, IHC expressly prohibits unlawful harassment,

including without limitation, "oral or written communications that contain … negative stereotyping or threats including those that target individual groups based on age, disability … [or] religion…."  In this regard, the Orientation Booklet expressly incorporates an equal employment opportunity policy that prohibits discrimination or harassment that is unlawful on any basis under federal, state, or local laws.

19.     The Orientation Booklet further states that it is IHC's role, responsibility and/or obligation to:

a)  Provide learning experiences for Ms. Sacchi to fulfill the objectives of her field instruction;

b)  Only dismiss Ms. Sacchi "for cause";

c)  Be respectful and sensitive to another's belief system (co-workers, patients, families, guests, etc.), including personal health beliefs and practices involving:

i)  Family and community relationships—i.e., "Are illnesses treated at home or by a community member? Who in the family makes decisions about healthcare?"

ii)  Religious/spiritual beliefs; and

iii)  Other cultural factors, including the "presence of a disability."

20.     The Orientation Booklet also states that IHC requires its workers and students to abide by "high ethical standards," which include:

a)  Performing jobs with honesty and integrity;

b)  Knowing and abiding by all laws;

c)  Speaking up with concerns about compliance and ethics issues; and

    d)  Reporting observed and suspected violations of laws or policies.

21.    As it regards reporting of suspected violations or discussing compliance concerns, the Orientation Booklet instructs workers and student to make their reports to a department manager or director, the facility compliance officer or the IHC Hotline.

22.    Violations regarding harassment can also be reported to the facility Human Resources Department, which is then responsible for conducting a prompt, thorough and confidential investigation, and only individuals with a need to know will have access to confidential communications resulting from the receipt and investigation of a complaint.

23.    Far from imparting benefits to Ms. Sacchi alone in the form of fulfilling an essential requirement of her certification with the Child Life Council, among other things, IHC also realized substantial benefits from Ms. Sacchi's internship.  Acting at her supervisors' direction, Ms. Sacchi supported procedures, visited patients, provided information to patients and their families, and taught pre-operative preparation classes – tasks that otherwise would have had to be performed by Primary Children's staff.

24.    Shortly after the Training Program started, Ms. Sacchi's father was transferred from a skilled nursing facility, to an assisted living facility.  With no other close relatives to help coordinate his care, Ms. Sacchi was forced to do so.

25.    When the assisted living facility requested that Ms. Sacchi submit documentation on her father's behalf, she explained her father's situation to Ms. Moss-Rosen, and asked about the possibility of sending a fax from the hospital.  Ms. Moss-Rosen gave Ms. Sacchi permission to send the fax.

26.     On September 18, 2015, approximately two weeks after sending the first fax, Ms. Sacchi sent another fax to the assisted living facility, and asked for assistance from the secretary to the Director of Child Life, Joy Singh ("Ms. Singh").

27.     Upon information and belief, Ms. Sacchi's inquiry about the fax led Ms. Singh to inquire and learn about Ms. Sacchi's father's health condition from her supervisors.

28.     The next day, at a department social event, Ms. Sacchi attempted to engage Ms. Singh in polite conversation, and Ms. Singh reacted coldly to Ms. Sacchi's overtures.

29.     On September 21, 2015, Ms. Kroll and Ms. Moss-Rosen called a meeting with Ms. Sacchi, in which they informed Ms. Sacchi that Ms. Singh had complained to them about her use of work time and resources to coordinate her father's care, and had expressed doubts whether it was a good time for Ms. Sacchi to be doing her internship under those circumstances.  Ms. Singh had also stated that Ms. Sacchi talked too much about her son to staff at lunch meetings, and that she suspected Ms. Sacchi was discussing personal matters inappropriately with patients' families.  Ms. Kroll and Ms. Moss-Rosen then indicated that Ms. Singh was considering terminating the internship.

30.     Ms. Sacchi responded to the relayed threat by Ms. Singh to discontinue her internship by protesting that it would be wrong to penalize her for having a sick father.

31.     Ms. Moss-Rosen stated that, if Ms. Singh "was vigilant before, she is hyper-vigilant now."

32.     Regardless, Ms. Sacchi agreed to relinquish her responsibilities for her father's care immediately, and arranged for them to be assumed by her stepfather.

33.     On or about September 25, 2015, Ms. Moss-Rosen informed Ms. Sacchi that Ms. Singh had said to her that if she received one more complaint then there wouldn't be any internship.

34.     The direct and indirect threats against Ms. Sacchi's internship continued throughout the rest of her time at Primary Children's.  With so much depending on the successful completion of her internship, Ms. Sacchi experienced extreme stress with physical manifestations.

35.     Upon information and belief, Ms. Singh coordinated a campaign to undermine and discredit Ms. Sacchi by soliciting negative feedback from Primary Children's child life staff, and then holding that feedback secret from Ms. Sacchi and her supervisors, instead of sharing it and enabling Ms. Sacchi to respond to the purported complaints or correct her behavior.  Ms. Singh's deceitful tactics created a toxic and hostile work environment, rather than a professional and constructive one, straining Ms. Sacchi's relationship with her supervisors and distracting from the substance of the internship.

36.     Nevertheless, Ms. Sacchi worked hard to meet the expectations of a child life intern, and was praised by her supervisors for her exceptional responsiveness to feedback.

37.     On October 29, 2015, Ms. Singh called a meeting with Ms. Sacchi and stated that she was suspending her internship, pending an investigation and a meeting the following week. Very little information was offered, other than that Ms. Singh had received comments and needed to see if Ms. Sacchi's internship was a "good fit" for Primary Children's.

38.     On November 3, 2015, Ms. Singh called Ms. Sacchi in for a subsequent meeting and informed her that her internship was being terminated. Ms. Singh gave little specifics beyond that she did not believe the internship was a "good fit," that she felt the internship had been "stunted," and that it was not the right time for Ms. Sacchi to do the internship given her family circumstances

39.     Upon information and belief, it is very rare for an institution to dismiss a child life intern at all, and it is unheard of for a child life intern to be dismissed from an internship for such a trivial reason as lack of "good fit."

40.     Being a "good fit" is not one of the "causes" – listed or otherwise – which would allow IHC to dismiss Ms. Sacchi from Primary Children's Training Program.  Ms. Sacchi was never informed that she would be evaluated for "good fit," nor what would or would not constitute a "good fit."  She was certainly never informed that this unknown, undefined factor could lead to her removal from the Training Program.

41.     As a result of her termination, Ms. Sacchi was unable to complete the clinical training requirements for her child life certification that semester. Further, Mills College withdrew its support for Ms. Sacchi in any further child life internships.

42.     Upon information and belief, Ms. Singh made false and derogatory comments to the Mills College administration that prompted the school to not only withdraw its support for Ms. Sacchi's continuation in her internship at Primary Children's, but to also withdraw its support for Ms. Sacchi in any further child life internships.

43.     Because she could not meet the clinical training requirement for Mills College's child life emphasis, the school forced Ms. Sacchi to drop that credential from her degree that she received in 2016.

44.     The end result of IHC's actions has been that Ms. Sacchi is effectively foreclosed from any chance of a career in the child life field, rendering her investment of time and money into her degree a complete and total loss.

45.     Upon information and belief, the other child life intern at Primary Children's – who is approximately half Ms. Sacchi's age, is an adherent of the LDS faith, and does not have a disabled family member – was treated more favorably than Ms. Sacchi under similar circumstances, inasmuch as she was not targeted and terminated by Ms. Singh, and was in fact hired for a permanent position.

46.     Upon information and belief, Ms. Singh was aware of Ms. Sacchi's sex and age, and that she is not LDS, because of typically obvious identifying characteristics.

47.     Upon information and belief, Ms. Singh was aware of Ms. Sacchi's status as a single mother, because Ms. Sacchi openly spoke of her circumstances with the child life staff at Primary Children's.  Indeed, married staff talked about their children often, without complaint or correction.

48.     When Ms. Sacchi read IHC's Orientation Booklet, as well as when she took her Student Orientation Quiz, Ms. Sacchi reasonably relied upon IHC's express commitments, promises, and instructions in the Orientation Booklet relating to her workplace protections and civil rights under both state and federal law.

49.     Plaintiff's reasonable reliance on IHC's promises and commitments to abide by all applicable anti-discrimination laws on the basis of any protected class under state or federal law will be to her detriment if Title VII, the ADEA and the ADA are deemed inapplicable to IHC notwithstanding its express representations in the Orientation Booklet and the Mills-IHC Agreement to the contrary.

50.     For the reasons stated in this Complaint, and because of its express representations on which Ms. Sacchi relied to her detriment, IHC should be estopped from denying the benefits and protections of federal law, as expressed by Title VII, the ADEA, and the ADA, to Ms. Sacchi as it relates to both her claims of unlawful discrimination and retaliation, whether based on her sex, religion, age, or association with a disabled person.

### FIRST CAUSE OF ACTION
**(Associational Discrimination – IHC only)**

32.     Plaintiff realleges and incorporates by reference each and every paragraph set forth above.

33.     IHC was a covered employer within the meaning of 42 U.S.C. § 12111(5), in that it was engaged in an industry affecting commerce, and employed 15 or more employees for each working day in each of the 20 or more calendar weeks in the current or preceding calendar year.

34.     Further, in the Mills-IHC Agreement, IHC expressly covenanted to "abide by all applicable anti-discrimination laws, including state and federal laws prohibiting discrimination against any employee or applicant or recipient of services on the basis of any protected class under state or federal law."  Likewise, in its Orientation Booklet, IHC

promised to "[a]ccept any student otherwise qualified without discrimination on the basis

of any protected class under state or federal law."  IHC thereby expressly held itself out

as an "employer" within the coverage of the ADA.

35.     Ms. Sacchi was employed by IHC within the meaning of 42 U.S.C. § 12111(4), in

that access to professional certification, among other benefits, constituted significant

remuneration for her service.

36.     Ms. Sacchi was qualified for the job of child life intern at the time of her

termination.

37.     Ms. Sacchi's termination constituted an adverse employment action in violation of

the ADA.

38.     IHC was aware that Ms. Sacchi's father had a disability within the meaning of 42

U.S.C. § 12102(1).

39.     IHC terminated Ms. Sacchi because of her father's disability and because of its

unjustified assumptions that his disability would distract Ms. Sacchi from her duties.

40.     As a result of IHC's violation of the ADA, Ms. Sacchi has suffered economic

losses including lost future earnings, tuition and moving expenses, as well as non-

pecuniary losses such as emotional pain and suffering, for which she is entitled to

recover damages.

41.     Because IHC acted with malice or with reckless indifference toward Ms. Sacchi's

federally protected rights, Ms. Sacchi is also entitled to recover punitive damages.

## SECOND CAUSE OF ACTION
### (Religion and Sex Discrimination – IHC only)

40.    Plaintiff realleges and incorporates by reference each and every paragraph set forth above.

41.    IHC was a covered employer within the meaning of 42 U.S.C. § 2000e(b), in that it was engaged in an industry affecting commerce, and employed 15 or more employees for each working day in each of the 20 or more calendar weeks in the current or preceding calendar year.

42.    Further, in the Mills-IHC Agreement, IHC expressly covenanted to "abide by all applicable anti-discrimination laws, including state and federal laws prohibiting discrimination against any employee or applicant or recipient of services on the basis of any protected class under state or federal law."  Likewise, in its Orientation Booklet, IHC promised to "[a]ccept any student otherwise qualified without discrimination on the basis of any protected class under state or federal law."  IHC thereby expressly held itself out as an "employer" within the coverage of Title VII.

43.    Ms. Sacchi was an employee within the meaning of 42 U.S.C. § 2000e(f), in that access to professional certification, among other benefits, constituted significant remuneration for her service.

44.    IHC terminated Ms. Sacchi because she is an unmarried woman with a child, and/or because she is not LDS.

45.    Ms. Sacchi's termination was a discriminatory adverse employment action in violation of Title VII.

46.     As a result of IHC's violation of Title VII, Ms. Sacchi has suffered economic losses including lost future earnings, tuition and moving expenses, as well as non-pecuniary losses such as emotional pain and suffering, for which she is entitled to recover damages.

47.     Because IHC acted with malice or with reckless indifference toward Ms. Sacchi's federally protected rights, Ms. Sacchi is also entitled to recover punitive damages.

### THIRD CAUSE OF ACTION
**(Age Discrimination – IHC only)**

48.     Plaintiff realleges and incorporates by reference each and every paragraph set forth above.

49.     IHC was a covered employer within the meaning of 29 U.S.C. § 630(b), in that it was engaged in an industry affecting commerce, and employed 20 or more employees for each working day in each of the 20 or more calendar weeks in the current or preceding calendar year.

50.     Further, in the Mills-IHC Agreement, IHC expressly covenanted to "abide by all applicable anti-discrimination laws, including state and federal laws prohibiting discrimination against any employee or applicant or recipient of services on the basis of any protected class under state or federal law."  Likewise, in its Orientation Booklet, IHC promised to "[a]ccept any student otherwise qualified without discrimination on the basis of any protected class under state or federal law."  IHC thereby expressly held itself out as an "employer" within the coverage of the ADEA.

51.     Ms. Sacchi was an employee within the meaning of 29 U.S.C. § 630(f), in that access to professional certification, among other benefits, constituted significant remuneration for her service.

52.     IHC terminated Ms. Sacchi because she is over 40 years of age.

53.     Ms. Sacchi's termination was a discriminatory adverse employment action in violation of the ADEA.

54.     As a result of IHC's violation of the ADEA, Ms. Sacchi has suffered economic losses including lost future earnings, tuition and moving expenses, as well as non-pecuniary losses such as emotional pain and suffering, for which she is entitled to recover damages.

55.     Because IHC acted with malice or with reckless indifference toward Ms. Sacchi's federally protected rights, Ms. Sacchi is also entitled to recover punitive damages.

## FOURTH CAUSE OF ACTION
### (Retaliation – IHC only)

56.     Plaintiff realleges and incorporates by reference each and every paragraph set forth above.

57.     Ms. Sacchi's complaint that it would be wrong for Ms. Singh to terminate her internship because of her father's illness constituted protected conduct under the ADA.

58.     After Ms. Sacchi engaged in protected conduct, Ms. Singh retaliated by creating a hostile work environment, and by ultimately terminating Ms. Sacchi's internship.

59.     As a result of this retaliation, Ms. Sacchi has suffered economic losses including lost future earnings, tuition and moving expenses, as well as non-pecuniary losses such as emotional pain and suffering, for which she is entitled to recover damages.

60.     Because IHC acted with malice or with reckless indifference toward Ms. Sacchi's federally protected rights, Ms. Sacchi is also entitled to recover punitive damages.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract – IHC only)**

61.     Plaintiff realleges and incorporates by reference each and every paragraph set forth above.

62.     The Mills-IHC Agreement constituted a valid and enforceable contract, the provisions of which are binding upon IHC.

63.     Ms. Sacchi was not a party to the Mills-IHC Agreement, but the parties to that contract did intend to confer a benefit upon her as a third party beneficiary.

64.     IHC breached the contract by terminating Ms. Sacchi's internship without proper reason, by failing to appropriately inform Ms. Sacchi of expectations and provide appropriate supervision, by its discriminatory conduct, and by acting in bad faith with respect to Ms. Sacchi.

65.

66.     As a result of these breaches, Ms. Sacchi has suffered economic losses including lost future earnings, tuition and moving expenses, and other consequential losses, for which she is entitled to recover damages.

**SIXTH CAUSE OF ACTION**
**(Defamation – IHC and Ms. Singh)**

67.     Plaintiff realleges and incorporates by reference each and every paragraph set forth above.

68.     Ms. Singh published statements about Ms. Sacchi to Mills College, which statements were false, defamatory, and not subject to any legal privilege.

69.     Ms. Singh's statements tend to impeach Ms. Sacchi's honesty, integrity and reputation.

70.     Ms. Singh's statements constitute defamation *per se* in that they relate to Ms. Sacchi's profession.

71.     IHC is vicariously liable for Ms. Singh's defamatory statements, because they were made within the scope of her employment.

72.     As a result of Ms. Singh's defamatory statements, Ms. Sacchi has suffered damages in an amount to be proven at trial.

73.     Because Ms. Singh made her statements willfully, maliciously, and with knowing or reckless indifference toward, and disregard of Ms. Sacchi's rights, Ms. Sacchi is also entitled to recover punitive and exemplary damages.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all questions raised in this Complaint that may be tried by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and grant the following relief:

1. With regard to the First, Second, Third and Fourth Causes of Action (ADA, Title VII, and ADEA Employment Discrimination and Retaliation), against Defendant IHC Health Services, Inc., for economic damages, plus compensatory and punitive damages as permitted by law;

2. With regard to the Fifth Cause of Action (Breach of Contract), against Defendant IHC Health Services, Inc., for compensatory and consequential damages;

3. With regard to the Sixth Cause of Action (Defamation), against Defendants IHC Health Services, Inc. and Joy Singh, for compensatory and punitive damages as permitted by law;

4. An award of pre- and post-judgment interest;

5. An award of costs incurred in bringing this litigation, including but not limited to reasonable attorneys' fees and costs; and

6. Such other relief that the Court deems just and equitable.

DATED this 27th day of October, 2016.

**WASATCH LAW GROUP, PLLC**

/s/ Christian Kesselring
*Attorneys for Plaintiff*

**PECK PETERSON, LLP**

/s/ Jaqualin Friend Peterson
*Attorneys for Plaintiff*

# Exhibit A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:
☐ FEPA
☒ EEOC   540-2016-01840

Utah Anti-Discrimination & Labor Division    and EEOC
*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Karna Sacchi** | **(707) 779-9970** | **09-04-1970** |

Street Address          City, State and ZIP Code

**P.O. Box 9003, Salt Lake City, UT 84109**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **IHC HEALTH SERVICES (DBA: PRIMARY CHILDREN'S MEDICAL CENTER** | **500 or More** | **(801) 662-6240** |

Street Address          City, State and ZIP Code

**100 N Mario Capecchi Dr,  Salt Lake City, UT 84113**

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

Street Address          City, State and ZIP Code

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest
**11-03-2015**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was initially placed in the Respondent's Child Life Intern program on 8-26-2015.  This program is required for certification as a Child Life Specialist.

In the fall of 2015, the Respondent found out about my father's serious health issues.  I was questioned about my attempts to assist with his care during the work day.   On 10-29-2015, I was placed on suspension pending an investigation to determine if I should still be allowed to participate in the internship program.   Then on 11-3-2015, I was released from the program due to not being a "Good fit."

I feel that I was suspended and discharged due to my association with a disabled family member, sex, Female, Age, 45, religion, and retaliation.  These are violations of Title VII of the Civil Rights Act

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

6/24/16          *[signature]*

Date          Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2016-01840 |

| Utah Anti-Discrimination & Labor Division | and EEOC |
|---|---|
| State or local Agency, if any | |

of 1964, as amended, the Americans with Disabilities Act of 1990, as amended, and the Age Discrimination in Employment Act of 1967, as amended.

| | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 6/24/16 _____ _____<br>Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

# Exhibit B

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Karna Sacchi**<br>**P.O. Box 9003**<br>**Salt Lake City, UT 84109** | From: **Phoenix District Office**<br>**3300 North Central Ave**<br>**Suite 690**<br>**Phoenix, AZ 85012** |

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **540-2016-01840** | **Patricia A. Miner,**<br>**Supervisory Investigator** | **(602) 640-5036** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Elizabeth Cadle,**
**Acting District Director**

JUL 2 7 2016

*(Date Mailed)*

Enclosures(s)

cc:

**Director**
**Human Resources**
**IHC HEALTH SERVICES INC, (DBA) PRIMARY**
**CHILDREN'S HOSPITAL**
**100 N Mario Capecchi Dr**
**Salt Lake City, UT 84113**

**Christian Kesselring**
**WASATCH LAW GROUP**
**1750 Sun Peak Drive**
**Park City, UT 84098**