**MANNING CURTIS BRADSHAW
   & BEDNAR PLLC**
Sammi V. Anderson, #9543
Christopher M. Glauser, #12101
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
Telephone:  (801) 363-5678
Facsimile:  (801) 364-5678
sanderson@mc2b.com
cglauser@mc2b.com

*Attorneys for Defendants IHC Health Services, Inc.*

---

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KARNA SACCHI,<br><br>          Plaintiff,<br><br>v.<br><br>IHC HEALTH SERVICES, INC. and JOY SINGH,<br><br>          Defendants. | **MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**<br><br>**Redacted – Non-Confidential**<br><br>Case No. 2:16-CV-1107-BSJ<br><br>Judge Bruce S. Jenkins |

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendants IHC Health Services, Inc. (the "Hospital") and Joy Singh (collectively "Defendants"), by and through undersigned counsel, hereby file this Motion to Dismiss First Amended Complaint and Memorandum in Support.

**<u>INTRODUCTION</u>**

Plaintiff Karna Sacchi's ("Plaintiff") First Amended Complaint (Dkt. 23) ("First Am. Compl.") only confirms that her claims are legally deficient and should be dismissed.  Although Plaintiff had three weeks to consider Defendants' first Motion to Dismiss, the new allegations do

nothing to change the original analysis.  Indeed, the only claim to which Plaintiff makes any meaningful change is her defamation claim, where she now identifies a single email providing performance feedback she claims to be defamatory.  That email is, as a matter of law, non-defamatory.  It is comprised of opinions about Plaintiff's performance during her ten-week unpaid internship provided to and at the request of Plaintiff's college internship supervisor. These non-defamatory statements are also privileged on their face because the parties to the communication plainly share a common interest in evaluating Plaintiff's performance in her school-supported internship.

Plaintiff also fails to identify any meaningful remuneration she claims to have received from the Hospital, as required to show an employment relationship to support her statutory claims.  Rather, Plaintiff continues to rely on the legally deficient items identified in her first Complaint.  This is insufficient under controlling and persuasive case law.

Plaintiff's amendment adds nothing to her breach of contract claim, which is based on a contract to which she is not a party and which expressly disclaims any third-party rights. Plaintiff's inability to allege the elements of her claims after being fully advised of their deficiencies by Defendants' first Motion to Dismiss conclusively demonstrates her claims' futility.  The Court should dismiss Plaintiff's First Amended Complaint in its entirety with prejudice.

## <u>RELIEF SOUGHT AND GROUNDS THEREFORE</u>

Defendants request the Court dismiss Plaintiff's claims with prejudice.  Plaintiff's federal discrimination claims must be dismissed because Plaintiff is not a covered "employee" and the Hospital is not Plaintiff's "employer" under the Americans with Disabilities Act ("ADA"), the

Age Discrimination in Employment Act ("ADEA"), or Title VII of the Civil Rights Act of 1964 ("Title VII"). *See, e.g., McGuinness v. University of New Mexico Sch. of Med.*, 170 F. 3d 974, 979 (10th Cir. 1998) ("To state a claim under Title I of the ADA, the defendant must be 'an employer, employment agency, labor organization, or joint labor-management committee' that employs the plaintiff.") (citing 42 U.S.C. § 12111(2) and (4)).

The law in this Circuit is clear that "[u]nless a student receives remuneration for the work [s]he performs, [s]he is not considered an employee" for purposes of the discrimination laws. *McGuinness*, 170 F. 3d at 979. Not a single requirement of an employment relationship is met here. Plaintiff was not paid. She did not receive vacation pay, health insurance, pension or retirement benefits, sick pay, or life insurance. She was not covered by workers' compensation. She was expressly designated as a non-employee in the governing contract. Because Plaintiff is not an employee, she is not covered by the ADA, ADEA, or Title VII, and the Court is without jurisdiction over her statutory claims. The EEOC acknowledged as much when it immediately dismissed Plaintiff's administrative charge without investigating. Indeed, after receiving Defendants' first Motion to Dismiss and taking three full weeks to consider it and amend her Complaint, Plaintiff fails to allege anything that changes this analysis or conclusion. The speculative allegation that Plaintiff *might* have completed her unpaid internship, which *might* have allowed her to take a certification test administered by a third-party entity, which she *might* have passed, after which she *might* have found a position as a Child Life Specialist is a far cry from the significant remuneration required to support an employment relationship.

Plaintiff's defamation claim should also be dismissed. Plaintiff has now supplemented her previously vague and conclusory allegations (*see* Complaint (Dkt. 2) at ¶ 42 (alleging

"[u]pon information and belief, Ms. Singh made false and derogatory comments" to the

"administration" of Plaintiff's former college)) by referring to a single email in which Ms. Singh

relayed to Plaintiff's college internship feedback from Plaintiff's internship supervisors at the

Hospital.  *See* First Am. Compl. ¶ 53.  As the Court can see from Plaintiff's own allegations, the

statements are not defamatory:

> These comments included that Ms. Sacchi had poor interpersonal skills, that her
> manner was stiff and intimidating, that she was socially unaware, that she was
> unable to read body language, that she had walked away from supervisors in the
> middle of instructions, that she failed to change in response to feedback, and that
> she exhibited negative and unrealistic attitudes toward the profession.

*Id*.  This is the full extent of the statements on which Plaintiff bases her defamation claim.  Ms.

Singh's relaying of others' honest opinions about Plaintiff's performance does not "impeach

[Plaintiff's] honesty, virtue, or reputation and thereby expose[] [her] to public hatred, contempt,

or ridicule" as required to sustain a defamation claim.  *West v. Thompson Newspapers*, 872 P. 2d

999, 1008 (Utah 1994)).  Ms. Singh's statements are also privileged.  They were made to

Plaintiff's academic supervisor, who shares an interest in evaluating Plaintiff's performance in an

internship arranged by the school in connection with Plaintiff's course of study and who

requested the feedback.  The statements are therefore subject to the common-interest privilege

and cannot form the basis of a defamation claim.  *See Brehany v. Nordstrom, Inc.,* 812 P.2d 49,

58 (Utah 1991) ("The law has long recognized that [statements are] conditionally privileged if

made to … advance a legitimate common interest between the publisher and the recipient").

Plaintiff's breach of contract claim should be dismissed because she is not a party to, and

has no rights under, the agreement between the Hospital and Plaintiff's former college on which

she bases this claim.  That agreement expressly [REDACTED].  Thus, its plain language requires dismissal of this claim as a matter of law.

Because the Court is without jurisdiction over Plaintiff's claims under federal law, it should decline to exercise supplemental jurisdiction over her state law claims.  *See* 28 U.S.C. § 1367.  The parties are all residents of the state of Utah, the state law claims involve questions of Utah law, and the Utah courts have an interest in and are a proper forum for them.  Thus, the Court should dismiss the state law claims for this additional reason.

Accordingly, Defendants request that the Court dismiss all of Plaintiff's claims with prejudice.

## STATEMENT OF RELEVANT FACTS

### Plaintiff's Unpaid Internship

1.     The Hospital allowed Plaintiff to participate in an unpaid, student internship in the Child Life Department at Primary Children's Hospital for approximately ten weeks in the fall of 2015.  *See* First Am. Compl. (Dkt. 23) ¶¶ 22, 47.

2.     Plaintiff does not allege that she was paid or that she received health benefits, life insurance, workers' compensation, retirement benefits, or any other employment-related benefit in connection with her brief, unpaid student internship.  *See generally* First Am. Compl.

3.     The Hospital's Child Life Department is composed of child development experts who work with young children to help ensure that their lives remain as normal as possible during potentially traumatic medical treatments.  This involves extensive interaction with the children and their parents, and requires Child Life Specialists to have strong interpersonal skills when dealing with children and parents in a difficult setting.  This sometimes includes accompanying

children into surgery and making quick decisions about how to interact with the children and their families as they prepare for intense medical procedures.

4.     Child Life Specialists are certified by a third-party entity called the Child Life Council, which is unaffiliated with the Hospital and sets its own certification requirements. *See* First Am. Compl. ¶¶ 11-12.

5.     Plaintiff does not dispute that she had difficulty interacting with patients, parents, and others, and that different supervisors at the Hospital discussed these issues with her on a number of occasions throughout her internship. *See id.* ¶¶ 37, 41, 46.[1]

6.     Plaintiff's ability to interact with others appropriately and professionally did not improve despite many meetings and coaching. Therefore, the Hospital ended her unpaid internship on November 3, 2015. *Id.* ¶ 47.

7.     Plaintiff filed a Charge with the EEOC on or around June 24, 2016. *See* Charge, attached to First Am. Compl. as Ex. A.

8.     The EEOC dismissed Plaintiff's Charge only a month later, on July 27, 2016, without even investigating her allegations (*see* First Am. Compl. at Ex. B), presumably because the EEOC recognized that Plaintiff, as an unpaid non-employee, is not subject to the federal discrimination laws under which she sues.

**Plaintiff's Complaint and Amendments**

9.     Plaintiff filed her Complaint on October 27, 2016, asserting four claims under federal anti-discrimination statutes and a claim for breach of contract against the Hospital.

---

[1] Although the Hospital disputes Plaintiff's characterizations of the meetings at which her lack of progress and inappropriate behavior were addressed, that dispute is irrelevant to this Motion and does not impact the reasons discussed below, showing that Plaintiff's claims should be dismissed.

Plaintiff also asserted a defamation claim against the Hospital and Ms. Singh, who is the Director of the Child Life Department at the Hospital.  *See* Complaint (Dkt. 2).

10.    After Defendants moved to dismiss (*see* Dkt. 21), Plaintiff filed her First Amended Complaint on April 14, 2017.  *See* Dkt. 23.  The First Amended Complaint asserts the same five claims as her original Complaint.  *See* Dkt. 2, 23.  It adds three paragraphs speculating about whether Plaintiff would have passed the Child Life Council's certification exam (*see* First Am. Compl. ¶¶ 15-17), one paragraph claiming that Plaintiff solicited feedback from her internship supervisors, but did not receive it (*id*. ¶ 44), one paragraph stating in conclusory fashion that Plaintiff "met expectations" in the internship (*id*. ¶ 50), one paragraph where Plaintiff attempts to defend her failure to simply apply for another internship at a different facility (*id*. ¶ 52), and one paragraph in which she identifies a single email that she claims to be defamatory (*id*. ¶ 53).  The First Amended Complaint is otherwise unchanged except to correct mistaken Paragraph numbering.

11.    Defendants' first Motion to Dismiss explained that Plaintiff's federal discrimination claims should be dismissed because Plaintiff does not allege that she received significant remuneration from the Hospital, as required to support an employment relationship. *See* Dkt. 21; Section I and Section I herein.  The only remuneration Plaintiff alleged to receive is that her unpaid internship satisfied one requirement for her to take a certification exam offered by the Child Life Counsel.  *See id*.  As Defendants' original Motion explained, this is insufficient for Plaintiff to qualify as an "employee" entitled to sue under the employment discrimination laws.  *Id*.

12.     Plaintiff's First Amended Complaint does nothing to cure this deficiency.  She does not identify any other remuneration she claims to have received, nor does she allege how the speculative and tenuous remuneration she has alleged could be sufficient.

13.     Plaintiff's first Complaint based her defamation claim entirely on the vague allegation that "[u]pon information and belief, Ms. Singh made false and derogatory comments to the Mills College administration…."  Complaint ¶ 42.  Recognizing the legal insufficiency of this pleading, Plaintiff now bases her defamation claim on a single email in which Ms. Singh relayed to Plaintiff's internship coordinator at Mills College, certain feedback from Plaintiff's internship liasons at the Hospital.  *See* First Am. Compl. ¶ 53.

14.     Specifically, Plaintiff alleges only as follows:

> In a November 2015 email message to Susan Marchant, who at the time was Student Supervisor at Mills College, Ms. Singh made false and derogatory comments that prompted the school to withdraw its support for Ms. Sacchi in any further child life internships.  These comments included that Ms. Sacchi had poor interpersonal skills, that her manner was stiff and intimidating, that she was socially unaware, that she was unable to read body language, that she had walked away from supervisors in the middle of instructions, that she failed to change in response to feedback, and that she exhibited negative and unrealistic attitudes toward the profession.  Anyone in the child life field hearing these statements, would understand that someone with such purported deficiencies would be unsuitable for the child life profession.

First Am. Compl. ¶ 53.

15.     Plaintiff does not identify any other allegedly defamatory statement.

16.     In fact, Ms. Singh also noted some positive feedback she had received about Plaintiff, including that Plaintiff might be a good fit for a research position because she is analytical and that she has great strengths in areas other than Child Life.

17.     Plaintiff did not amend any of the allegations related to her breach of contract claim.  That claim is based on an agreement between the Hospital and Mills College.  *See* First Am. Compl. ¶¶ 95-98.  Plaintiff concedes that she "was not a party to the Mills-[Hospital] Agreement."  *Id.* ¶ 96.  Rather, she claims only to be a third-party beneficiary of that contract. *Id.*

18.     Contrary to Plaintiff's claim, the agreement expressly states that it [REDACTED] *See* Agreement, filed under seal[2] as Ex. A to Dkt. 22 at Section 15.[3]

19.     The agreement also provides that Mills College will [REDACTED].

20.     The agreement further confirms that Plaintiff was not an employee by expressly providing that [REDACTED].

---

[2] The agreement is subject to a confidentiality obligation.  The Hospital sought Mills College's consent to publicly file the agreement, but the college refused.

[3] The Court may consider the Mills College agreement without conversion to a motion for summary judgment because it is referenced throughout Plaintiff's First Amended Complaint and is central to her contract claim.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F. 3d 1381, 1384 (10th Cir. 1997).  Plaintiff cannot avoid a motion to dismiss by failing to attach the document which forms the basis of her claim.

## ARGUMENT

Dismissal under Rule 12(b)(6) is required where Plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face."  *Robbins v. State of Okl. ex rel. Dep't of Human Services,* 519 F.3d 1242, 1247 (10th Cir.2008) (citation omitted).  "Conclusory allegations are not facts and a complaint that makes 'naked assertions devoid of further factual enhancement' will not suffice under 12(b)(6)."  *Horton v. Murray Energy Corp.*, No. 2:11-cv-1147, 2013 WL 4017050, *2 (D. Utah Aug. 6, 2013) (quotation omitted).  On a facial challenge to jurisdiction, dismissal under Rule 12(b)(1) is similarly appropriate where the allegations of the Complaint fail to plausibly allege the existence of the Court's jurisdiction.  *See Stewart v. Colorado Interstate Gas Co.*, 271 F. 3d 1221, 1225 (10th Cir. 2001).

## I.    THE HOSPITAL DID NOT EMPLOY PLAINTIFF.

Plaintiff's statutory claims require her to prove that the Hospital is her "employer."  *See* 42 U.S.C. §§ 12111 (2) and 12112(a) (providing that ADA applies to "covered entit[ies]" defined as "an employer, employment agency, labor organization, or joint labor-management committee"); 29 U.S.C. § 623(a) (providing that it is unlawful for an "employer" to discriminate based on age); 42 U.S.C. § 2000e (providing that it is unlawful for an "employer" to discriminate based on "race, color, religion, sex, or national origin").  To establish this required employment relationship, and thus the Court's jurisdiction over her federal claims, Plaintiff must prove that she "receive[d] remuneration for the work [s]he perform[ed]."  *McGuinness*, 170 F. 3d at 979 (holding that student could not assert ADA claim against medical school because he was not

remunerated by the school).  "Where no financial benefit is obtained by the purported employee

from the employer, no plausible employment relationship of any sort can be said to exist because

although compensation by the putative employer to the putative employee in exchange for his

services is not a sufficient condition, … it is an essential condition to the existence of an

employer-employee relationship."  *Pettyjohn v. Principi*, No. CIV-03-230-C, 2005 WL 3088587,

*2 (W.D. Okla. Nov. 17, 2005) (quoting *O'Connor v. Davis*, 126 F. 3d 112, 115-6 (2d Cir.

1997)) (internal quotation marks omitted) (granting summary judgment on Title VII and ADA

claims by hospital volunteer). [4]

 In rare cases where courts have found employee status for unpaid volunteers, they require

that the plaintiff receive "numerous job-related benefits," such as pensions, life or disability

insurance, and medical benefits.  *Pietras v. Board of Fire Com'rs of Farmingville Fire Dist.*, 180

F. 3d 468, 471 (2d Cir. 1999); *see also Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6

F. 3d 211 (4th Cir. 1993) (finding dispute of fact as to remuneration where plaintiff received

disability pension, survivors benefits, scholarships for dependents, life insurance, tuition

reimbursement, workers' compensation, tax exemptions, and other benefits).  The EEOC, relying

on these cases, has issued guidance explaining that:

---

[4] The common sense underpinnings of this holding are reflected in the remedies available under
the employment discrimination statutes, the most primary component of which is **back pay**.  *See,
e.g.* 42 U.S.C. § 2000e-5.  Because Plaintiff was an unpaid intern who received no wages or
benefits, she cannot make a claim for back pay.  Instead, she seeks to recover speculative
damages based on multiple assumptions, including that she would have completed the other
requirements for certification by the Child Life Council, that she would have found employment
in that field, and that she would have earned more in that employment than other potential jobs
she could have obtained with the master's degree she admits she earned despite her allegations in
this case.  *See* Complaint ¶ 43.  That Plaintiff cannot claim back pay and must instead resort to
such speculation underscores that she is not intended to be covered by the employee protection
statutes.

> Volunteers usually are not protected 'employees.'  However, an individual may be considered an employee of a particular entity if, as a result of volunteer service, s/he receives benefits such as a pension, group life insurance, workers' compensation, **and** access to professional certification, even if the benefits are provided by a third party.  The benefits constitute 'significant remuneration' rather than merely the 'inconsequential incidents of an otherwise gratuitous relationship.'

EEOC Compliance Manual Section 2-III(A)(1)(c) (emphasis supplied).

It is undisputed that the Hospital did not provide Plaintiff with "numerous job-related benefits" such as have been found by the courts to constitute remuneration.  Plaintiff was not paid and she received no life insurance, health benefits, pension, workers' compensation, or any other employment benefit.  The Hospital's agreement with Mills College confirms that Plaintiff was never a Hospital employee, stating that Plaintiff [REDACTED] and that [REDACTED]. SOF ¶¶ 18-20.  The agreement [REDACTED].  *Id*.

Multiple courts have held that hospital volunteers like Plaintiff are <u>not</u> "employees" under similar circumstances.  *See O'Connor*, 126 F. 3d at 116 (holding that plaintiff was not an employee where she received "no salary or other wages, and no employee benefits such as health insurance, vacation, or sick pay, nor was she promised such compensation"); *Pettyjohn*, 2005 WL 3088587, *2 (holding that plaintiff was not an employee where he "never suggest[ed] he received wages or any other type of financial benefit from the VA Hospital.").  Courts have also rejected "employee" status despite compensation much more significant than anything alleged by Plaintiff.  *See, e.g., Junio v. Livingston Parish Fire Dist. No. 5*, 717 F. 3d 431 (5th Cir. 2013) (holding plaintiff was <u>not</u> an employee where she received life insurance, payments, uniform and badge, equipment, and firefighting and emergency response training); *Marek v. Phi Theta Kappa Honor Society*, No. 6:14-0055, 2015 WL 632145 (S.D. Tex. Feb. 13, 2015) (holding plaintiff

was <u>not</u> an employee where she received hundreds of dollars, a tablet, a credit card, and meal per diems).

Plaintiff attempts to allege a single purported benefit – that the Child Life Council (a third-party organization not affiliated with the Hospital) required her to complete a certain number of clinical intern hours before she could attempt to be certified by that organization.  *See* First Am. Compl.¶ 12.  Plaintiff concedes that this clinical hours requirement, which she could have fulfilled with any number of other hospitals or organizations throughout the country, is but one of many requirements for that certification.  For example, Plaintiff also had to complete educational course work and pass an independent examination before she could be certified.  *See* First Am. Compl. ¶¶ 11-14, 17.  Simply completing her unpaid internship with the Hospital did not guarantee that she would also pass her required classes, pass the certification exam, or ultimately become certified, nor did it guarantee that she would find paid employment in the field after she completed the many other requirements of the Child Life Council.  This speculative, potential benefit cannot satisfy the remuneration requirement.  *See Evans v. Wilkinson*, 609 F. Supp. 2d 489, 495-6 (D. Md. 2009) (holding that potential scholarship, first-time home buyers credit, and contingent length of service payments were insufficient to qualify plaintiff as an employee under Title VII and the ADEA because non-guaranteed benefits were too incidental and speculative).[5]

---

[5] Plaintiff's new allegations in her First Amended Complaint that the Child Life Council had reviewed her coursework up to that point, that Mills College students have "[h]istorically" been prepared for the Child Life certification exam, that Plaintiff believes herself to be an "excellent student," and that she believed it was "likely" that she would have passed the exam are irrelevant. *See* First Am. Compl. ¶¶ 15-17.  As noted, Plaintiff's internship might have fulfilled one of many requirements for her to become certified, none of the rest of which have anything to do with the Hospital.  Fulfilling a single certification requirement is simply not significant remuneration

To the contrary, a number of courts have held that an unpaid student or intern who receives potential education credit or certification is not an employee.  In *McGuinness*, for example, a medical student sued the university he was attending for alleged ADA violations after he failed to earn the required grades to complete his first year of medical school.  170 F. 3d at 977.  A degree from an accredited medical school is, of course, required for any certification to practice medicine.  Nevertheless, the Tenth Circuit held that the plaintiff was not an "employee" because he did not receive any payment or other employment benefits.  *Id*. at 979.  Similarly, in *O'Connor*, the Second Circuit held that an unpaid hospital intern who needed clinical hours to complete her degree was not an employee.  125 F. 3d at 113-116.  Notably, the plaintiff in *O'Connor* also received federal work study funds as payment during the time she spent volunteering at the hospital, which is more remuneration than Plaintiff alleges she received.  *Id*. at 113.  The court nevertheless held that she was not an employee under Title VII because she did not receive direct or indirect remuneration from the hospital.  *Id*. at 116; *see also Moran v. Harris County*, No. H-07-582, 2007 WL 2534824 (S.D. Tex. Aug. 31, 2007) (holding that experience, connections, and free certification classes were insufficient to render volunteer an "employee" because "[w]hat distinguishes an employee from a volunteer is that in exchange for his labor, an employee is paid – directly or indirectly – money"); *cf Talley v. Washburn University*, No. 11-2597-CM, 2012 WL 1828926 (D. Kan. May 18, 2012) (holding that "an unpaid, temporary, part-time internship" at prison hospital was not employment under

---

under the case law cited above (which requires additional remuneration such as significant benefits, insurance, retirement accounts, etc.), even if certification had been guaranteed. Moreover, Plaintiff's new conclusory allegations of her own opinion about her test-taking abilities do not make her fulfilling all other requirements, passing the exam, and finding employment in what she characterizes as a competitive field (*see* First Am. Compl. ¶ 52) any less speculative.

*McGuinness* where plaintiff claimed that internship "conferred a benefit … in the form of training and experience").

These courts unanimously found that an unpaid student or intern is not an "employee" even where some part of the program satisfied a certification or educational requirement.  Were it otherwise, every student seeking a degree or certification would be an "employee" of their college or university entitled to sue if they failed to graduate.  The same would be true of any intern accumulating practice hours or school credits through unpaid opportunities, such as judicial or legal interns or government volunteers.  Such a holding would have troubling effects, including providing a significant disincentive for organizations to offer unpaid opportunities for aspiring professionals to observe and gain experience in a real-life environment.  This is plainly not what Congress intended when it passed the ADA, ADEA, and Title VII, all of which expressly limit their application to employment relationships.

Plaintiff was a short-term, unpaid, student volunteer who received no employment benefits and who was expressly designated as a non-employee.  Plaintiff received none of the benefits that courts have recognized might entitle a volunteer to proceed under the ADA, ADEA, or Title VII.  Accordingly, the Court should dismiss Plaintiff's First, Second, Third, and Fourth causes of action.[6]

## II.   THE FIRST AMENDED COMPLAINT CONFIRMS THAT DEFENDANTS DID NOT DEFAME PLAINTIFF.

---

[6] The EEOC must agree that Plaintiff was not an "employee."  As Plaintiff notes, the EEOC dismissed her Charge only one month after it was filed without conducting any investigation of the Hospital.  *See* SOF ¶¶ 5-6.  In other words, the EEOC correctly recognized that it was without jurisdiction because Plaintiff is an unpaid volunteer.  *See Pettyjohn*, 2005 WL 3088587, *2 (noting that EEOC likely concluded that unpaid volunteer plaintiff was not an employee and reaching same conclusion).  This is the only plausible explanation.

In her first Complaint, Plaintiff failed to identify any specific statement that she claimed to be defamatory. *See, e.g.,* Motion to Dismiss (Dkt. 21) at Section II. Acknowledging that her first Complaint was legally insufficient, Plaintiff now identifies a single email from the Hospital's Department Director to Plaintiff's School liason. *See* First Am. Compl. ¶ 53. The statements in that email, as alleged by Plaintiff, are non-defamatory evaluations among individuals who share an interest in Plaintiff's internship performance. *See id*. This undisputable evidence confirms that Plaintiff cannot allege any actionable defamation because: (1) the email is not capable of sustaining a defamatory meaning; and (2) Ms. Singh's statements to Ms. Marchant, who shares a common interest in the evaluation of Plaintiff's performance, are privileged.

### a.   The Email is not Capable of Sustaining a Defamatory Meaning.

Whether a statement is capable of sustaining a defamatory meaning is a question of law that the Court can decide. *LifeVantage Corp. v. Domingo*, No. 2:13-cv-1037, 2016 WL 4705540, *6 (D. Utah Sept. 8, 2016) (quoting *West v. Thompson Newspapers*, 872 P. 2d 999, 1008 (Utah 1994)). The Utah Supreme Court has recognized that, because the First Amendment is always "in tow," a modified standard applies in reviewing defamation claims. *See O'Connor v. Burningham*, 165 P. 3d 1214, 1222 (Utah 2007). Specifically, when determining whether a statement is capable of sustaining a defamatory meaning, there is "no room for indulging inferences in favor of the nonmoving party in the district court." *Id*.; *see also Jacob v. Bezzant*, 212 P. 3d 535, 542-3 (Utah 2009) (applying *O'Connor* standard to Rule 12(c) motion). Accordingly, the Court must not "indulge [Plaintiff] by interpreting inferences that may be

reasonably drawn from the [allegedly defamatory] statements in favor of a defamatory meaning." *Jacob*, 212 P. 3d at 542.

"[A] statement is defamatory if it impeaches an individual's honesty, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule." *LifeVantage*, 2016 WL 4705540, *6 (quoting *West*, 872 P. 2d at 1008). "[A] publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about the plaintiff." *Id.*at *7 (quoting *West*. 872 P. 2d at 1009). Mere statements of opinion, and even "sharp criticism," are not defamatory. *Id.* (quoting *West* at 1009). None of the statements in Ms. Singh's email are capable of sustaining a defamatory meaning under these standards.

Nothing in Ms. Singh's email impeaches Plaintiff's "honesty, virtue, or reputation," nor does it expose her to "hatred, contempt, or ridicule." *West*, 872 P. 2d at 1008. Ms. Singh simply relayed, at Ms. Marchant's request, feedback from Plaintiff's internship liaisons. This includes others' impressions of Plaintiff's internship performance, such as Plaintiff's "poor interpersonal skills," her inability to "read body language," her "stiff and intimidating" manner, and that she seemed "socially unaware." *See* First Am. Compl. ¶ 53. It also includes positive feedback, such as noting Plaintiff's great strengths in other areas and her analytical ability. *Id.* ¶ 16. None of the feedback relates in any way to Plaintiff's honesty, virtue, or reputation, and providing this requested and expected feedback to Plaintiff's academic supervisor certainly does not expose her to "public hatred, contempt, or ridicule." *West*, 872 P. 2d at 1008. These are simply statements of opinion and observations about Plaintiff's internship performance that cannot support a defamation claim. *See LifeVantage*, 2016 WL 4705540, *6 (discussed below); *see also B.J. Barnes & Sons Trucking, Inc. v. Dairy Farmers of America, Inc.*, No. Civ. 2:05-CV-351-BSJ,

2006 WL 1472689, *3 (D. Utah May 22, 2006) (characterizing statement that plaintiff "was not doing a very good job" and that "all of the problems experienced by [defendant entity's members] were the fault of [the plaintiff]" as "expressions of subjective opinion").

In *LifeVantage*, another court in this District rejected a defamation claim based on statements that were much sharper in their criticism of the plaintiff.  The plaintiff alleged that a third-party defendant defamed him by sending written statements to the CEO of the company at which the plaintiff and defendant were both independent, direct selling distributors.  *See LifeVantage*, 2016 WL 4705540, * 2.  The written statements accused the plaintiff of "us[ing] his influence inappropriately," encouraging company officers to support other independent distributors and not the defendant, making "extremely inappropriate" comments, creating "resentment, division and an unfair distribution of corporate resources," causing a "[f]lat [g]rowth [p]eriod" at the company, using a company officer as a "puppet in order to achieve his personal goals," using his influence "for selfish personal interests," attempting to "shine a negative light" on the CEO, being a "negative influence," "exaggerate[ing]" the CEO's "perceived mistakes" for personal gain, and attempting to get the CEO removed.  *Id*. at * 6.  Despite the seriousness and negativity of these statements, the court held that:

> None of those statements, however, is capable of sustaining a defamatory meaning.  **Rather, all of those statements are of [defendant's] opinion**. As the Utah Supreme Court has explained, "[a] publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about the plaintiff." …. These statements cannot be said to expose [plaintiff] to "public hatred, contempt, or ridicule" as is required to sustain a claim for defamation. …. They are, at worst, nothing more than "sharp criticism" of [plaintiff] as self-serving and selfish. …. But merely calling a person selfish or self-serving in his or her business dealings, without more, cannot be defamatory.

*Id*. (emphasis supplied).

The statements on which Plaintiff bases her defamation claim, such as noting Plaintiff's "stiff" demeanor or her difficulty reading social cues, pale in comparison to the statements in *LifeVantage*, which the court held were not defamatory as a matter of law.  No one accused Plaintiff of being "selfish or self-serving" or of doing anything improper, as was the case in *LifeVantage*.  Ms. Singh simply relayed the opinions of Plaintiff's internship liaisons at Ms. Marchant's request, including some positive feedback.  These statements of opinion are not defamatory as a matter of law.

      **b.**    **The Email is Privileged.**

"The law has long recognized that [statements are] conditionally privileged if made to … advance a legitimate common interest between the publisher and the recipient …." *Brehany*, 812 P.2d at 58.  "An occasion is conditionally privileged when the circumstances induce a correct or reasonable belief that (a) facts exist which affect a sufficiently important interest of the publisher, and (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest." *Combes v. Montgomery Ward & Co.*, 228 P. 2d 272, 275 (Utah 1951 ) (internal quotation marks and citation omitted).

Courts often apply this privilege to communications evaluating the performance of students and interns in situations similar to this case. *See Wheeler v. Miller*, 168 F. 3d 241, 252-53 (5th Cir. 1999) (holding that communications from faculty members to graduate program admission committee and to entity providing internship about student's academic and practical performance were conditionally privileged); *Kerr v. Marshall University Board of Governors*, 824 F. 3d 62, 76-77 (4th Cir. 2016) (holding that statements made by student teacher's supervisor to student teacher's university were conditionally privileged based on common interest "to ensure

that the middle-school Social Studies students in West Virginia were taught by qualified educators.").  Courts have also recognized that the privilege should be applied where the subject of the communications has consented to being evaluated, as is the case with students like Plaintiff.  *See Kraft v. William Alanson White Psychiatric Foundation*, 498 A. 2d 1145, (D.C. Ct. App. 1985) (holding that statements in student's file were privileged because "A person who seeks an academic credential and who is on notice that satisfactory performance is a prerequisite to his receipt of that credential consents to frank evaluation by those charged with the responsibility to supervise him."); *see also* Restatement (Second) of Torts § 583 ("the consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation").  The reasoning of these cases is particularly compelling in the medical field, where providers like the Hospital have an obligation to provide truthful, uncensored feedback about the progress of interns who are trying to obtain degrees and positions that will allow them to provide medical or mental health care to patients who are often in vulnerable conditions.

Here it cannot be reasonably disputed that Ms. Singh, the director of the department where Plaintiff had her unpaid internship, and Ms. Marchant, Plaintiff's college internship supervisor, share a common interest in evaluating Plaintiff's internship performance.  Indeed, the Hospital's agreement with Mills College [REDACTED].  And Plaintiff plainly understood that her performance during the internship would be evaluated, as she undertook the internship in connection with a college course of study.  *See* First Am. Compl. ¶¶ 54.  The position she sought involves counseling, advising, and comforting children confronted with serious illnesses and potentially traumatic medical procedures, such as cancer, chemotherapy, surgery, and other

critical situations.  The Hospital and Mills College had a strong, shared interest in thoroughly

evaluating Plaintiff's performance to ensure that she was capable of going on to provide

appropriate care to vulnerable children.  Accordingly, their communications on that subject are

protected by the common interest privilege and cannot form the basis of Plaintiff's defamation

claim.

## III.  PLAINTIFF'S CONTRACT CLAIM SHOULD BE DISMISSED BECAUSE SHE IS NOT A PARTY OR THIRD-PARTY BENEFICARY TO THE CONTRACT.

"One of the most basic principles of contract law is that, as a general rule, only parties to

the contract may enforce the rights and obligations created by the contract."  *Wagner v. Clifton*,

62 P.3d 440, 442 (Utah 2002) (citation omitted).  "[O]nly if the written contract's clear intent is

to confer rights upon a third party may that third party enforce rights and obligations of the

contract."  *Id*.  To create a third-party beneficiary, "[t]he written contract must show that the

contracting parties clearly intended to confer a separate and distinct benefit upon the third party."

*Id*.  (internal quotation marks and citation omitted).   "It is not enough that the parties to the

contract know, expect or even intend that others will benefit from the [contract].... The contract

must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively

make this intention clear."  *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*,

28 P.3d 669, 684 (Utah 2001) (citation and internal quotation marks omitted).

In accordance with these principles, third-party beneficiary status is precluded when the

contracting parties expressly state their intent <u>not</u> to create third-party rights.  *See* 17A AM. JUR.

2D *Contracts* § 420  ("[a]n express provision negating an intent to permit enforcement of the

contract by third parties is decisive as to the rights of such parties to enforce it.");  Restatement

(Second) of Contracts § 302(1) (describing the circumstances creating third-party beneficiary

rights "[u]nless otherwise agreed between promisor and promisee").  Indeed, "Utah courts have dismissed a third-party beneficiary claim pursuant to a Rule 12(b)(6) motion where the contract contained a clause declaring that there was no intended third-party beneficiary."  *Fornazor Intern., Inc. v. Huntsman*, No. 2:14-CV-291, 2015 WL 6142962, *8 (D. Utah Oct. 19, 2015) (citing *Lilley v. JP Morgan Chase,* 317 P.3d 470, 473 (Utah Ct.App.2013)).  In *Fornazor*, the plaintiff argued that a provision stating the contract was "not intended and shall not be interpreted as conferring any benefit on any third party" was not determinative because of "conflicting evidence."  The court disagreed, explaining that:

> Under Utah law, only if the written contract's clear intent is to confer rights upon a third party may that third party enforce rights and obligations of the contract. Here, the written contract does not demonstrate a clear intent to confer rights upon Fornazor.  To the contrary, the Agreement's clear intent is to reject Fornazor's claim as a third-party.

*Id.* (citation and internal quotation marks omitted) (dismissing third-party beneficiary claim); *see also Lilley*, 317 P. 3d at 473 (dismissing third-party beneficiary claim where agreement stated it "was not to be used by '*any other party or for any other purpose*'" and therefore "the plain language of the report expressly reject[ed] such an intent [to confer third party rights]"); *SME Indus.*, 28 P. 3d at 685 (affirming summary judgment against third-party beneficiary claim where contract at issue disclaimed third-party rights).

Plaintiff admits that she is not a party to the agreement on which her contract claim is based.  *See* First Am. Compl. ¶ 96.  Thus, her third-party beneficiary status turns on the plain language of the agreement.  That language expressly states that the agreement [REDACTED]. Dkt. 22 at Ex. A, (Agreement) Section 15.  As in the cases cited above, this language demonstrates the contracting parties' memorialized intent that Plaintiff *not* be a third-party

beneficiary to the agreement.  Accordingly, Plaintiff cannot bring a contract claim and that claim should also be dismissed.

Notably, Plaintiff makes no effort to supplement her allegations regarding her contract claim in the First Amended Complaint.  Thus, although she is aware of the Hospital's position, she is unable to identify any basis to assert third-party beneficiary rights in light of this plain contractual language or to point to any reason why that plain language does not bar her claim. Plaintiff's failure to make such allegations after being confronted with the Hospital's FIRST motion further confirms that she has no basis to claim any rights under the Hospital's agreement with Mills College.  The Court should dismiss this claim.

## IV.    PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION.

As set forth above, the Court should dismiss Plaintiff's federal claims because she is not an "employee" under the ADA, ADEA, or Title VII.  Thus, the Court has discretion to decline to exercise supplemental jurisdiction over Plaintiff's state law claims where it has "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "In deciding whether to retain jurisdiction, the court considers and weighs judicial economy, convenience, fairness and comity."  *Eidson v. Owens*, No. CIV-06-062, 2008 WL 961617, *1 (E.D. Okla. April 8, 2008) (citing *Fitzgerald v. Corrections Corp. of Am.,* 403 F.3d 1134, 1145 (10th Cir.2005)). "Furthermore, in weighing these considerations, as the state courts are best situated to hear the state law claims, the Tenth Circuit has noted that 'the most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice.'"  *Id*. (quoting *Ball v. Renner,* 54 F.3d 664, 669 (10th Cir. 1995)).

Here, judicial economy, convenience, fairness and comity support the federal dismissal of Plaintiff's state law claims.  All parties reside in Salt Lake County, Utah, making Utah's Third District Court a convenient, fair, and economical venue.  Complaint ¶¶ 1-2.  The state law contract and defamation claims will be decided by Utah substantive law, leaving Utah's state courts with a strong interest in resolving those claims.  Moreover, because this case is in its earliest stages, there will be no delay, prejudice, or inconvenience in allowing the state courts to address Plaintiff's claims.  Accordingly, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## **<u>CONCLUSION</u>**

For the forgoing reason, Defendants request that Plaintiff's Complaint be dismissed with prejudice.

DATED this 2nd day of May, 2017.

MANNING CURTIS BRADSHAW
 & BEDNAR PLLC


*/s/ Christopher M. Glauser*
Sammi V. Anderson
Christopher M. Glauser
*Attorneys for Defendant IHC Health Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing **MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT – Redacted – Non-Confidential** to be served in the method indicated below to the below-named parties this 2nd day of May, 2017.

Christian Kesselring
WASATCH LAW GROUP, PLLC    ___HAND DELIVERY
P.O. Box 866    ___U.S. MAIL
Heber City, Utah 84032    ___FAX TRANSMISSION
christian@wasatchlawgroup.com    _x_ E-MAIL TRANSMISSION
*Attorneys for Plaintiff*    ___ECF


Jaqualin Friend Peterson    ___HAND DELIVERY
PECK PETERSON, LLP    ___U.S. MAIL
675 East 2100 South, Ste. 350    ___FAX TRANSMISSION
Salt Lake City, Utah 84106    _x_ E-MAIL TRANSMISSION
jaqualin@peckpeterson.com    ___ECF
*Attorneys for Plaintiff*


         */s/ Christopher M. Glauser*